## A08A0935. OLIVER v. THE STATE.
(669 SE2d 162)

PHIPPS, Judge.

At a jury trial, Curtis Oliver was convicted of failure to maintain lane, operating a motor vehicle without taillights, and driving under the influence of alcohol to the extent that it was less safe to drive. Following the denial of his motion for new trial, he appeals. He charges the trial court with abuses of discretion in refusing to allow his expert witness to testify about National Highway Traffic Safety Administration (NHTSA) guidelines for conducting field sobriety evaluations and in refusing to declare a mistrial when a state's witness who had administered only an alco-sensor breath test to Oliver testified about unlawful alcohol concentrations. Finding no abuse of discretion, we affirm.

Between 12:00 and 12:30 a.m. on January 31, 2007, Cherokee County Sheriff's Office Sergeant Jim Korey saw Oliver driving erratically and without any taillights. Because Korey was not in his patrol zone, he summoned other officers to the scene. Oliver was then stopped by Cherokee County Deputy Sheriff Paul Muzzuca. After Muzzuca approached Oliver's vehicle, he smelled the odor of an alcoholic beverage coming from Oliver and observed that his eyes were very bloodshot and his speech was very slurred. Muzzuca asked

whether Oliver had been drinking, and Oliver responded "too much." When Muzzuca asked Oliver to exit the vehicle, he stumbled and swayed as he walked.

At trial, Muzzuca testified that he then asked Oliver to blow into an alco-sensor machine. When the prosecutor inquired as to the purpose of the device, Muzzuca responded that it produces a preliminary breath sample to tell whether a person is under the influence of alcohol. Defense counsel objected, on the ground that the device simply gives a positive or negative indication of the presence of alcohol without any numerical reading.[1] After the court sustained the objection and instructed the jury to "disregard anything other than a positive or a negative indication," Muzzuca testified that the machine registered positive when Oliver blew into it. Muzzuca further testified that he then asked whether Oliver had any problems with his knees, ankles, legs, or back. Because Oliver responded that he had problems with virtually all of those body parts, Muzzuca elected not to perform any further field sobriety evaluations, but rather arrested Oliver for DUI based on his conclusion that Oliver was under the influence of alcohol to the extent that it was less safe for him to drive. After being given implied consent warnings for suspects 21 years and over, Oliver refused to submit to any additional state-administered chemical tests.

On cross-examination, defense counsel asked Muzzuca whether it was "true that someone 21 and over can have alcohol on their breath or in their body and still drive and still be legal under the law." Muzzuca answered, "That's true if they're under the .08 grams, which is the legal limit for the state." Defense counsel later moved for a mistrial on the ground that Muzzuca's testimony was improper in view of the trial court's sustaining of the defense's earlier objection. The trial court denied the mistrial motion.

Although the defense then called to the stand an expert in DUI investigations, the trial court sustained the state's objection to his testimony. A proffer of evidence by the defense showed that the expert would have testified that, even though Muzzuca was correct in not performing field sobriety evaluations such as the walk-and-turn and one-leg stand due to Oliver's physical infirmities, according to NHTSA guidelines Muzzuca should have performed a horizontal gaze nystagmus test and then perhaps an alphabet test, rather than administering the alco-sensor test as the first field sobriety evaluation during the DUI investigation. According to this expert, admin-

---

[1] See *State v. Holler*, 224 Ga. App. 66, 68-69 (1) (479 SE2d 780) (1996) (alco-sensor test results admissible on question of whether suspect tested positive or negative, but inadmissible as evidence of the amount of alcohol or drug in a person's blood).

istration of an alco-sensor test at the beginning of a traffic stop creates a risk that unabsorbed alcohol in the suspect's mouth will be distributed into the alco-sensor, thereby producing an artificially high initial reading; therefore, an officer should wait about 20 minutes after first stopping a suspect before performing an alco-sensor test.

Both Korey's and Muzzuca's patrol vehicles were equipped with DVD machines that captured various aspects of the incident. A DVD from each machine was admitted in evidence and played to the jury.

1. Oliver complains of the trial court's refusal to admit his expert's testimony. Oliver sought to admit this testimony for essentially two purposes.

First, he wanted to use the expert testimony to challenge the reliability of the alco-sensor test. As argued by Oliver, however, the purpose of the alco-sensor test is simply to verify the presence or absence of alcohol in a suspect's breath. Oliver admitted that he had been drinking, and the trial court admitted only Muzzuca's testimony that the alco-sensor produced a positive result.[2] Under these circumstances, we fail to see how the mistake charged to Muzzuca in administering the alco-sensor test too soon after he first stopped Oliver would have affected the test result to which Muzzuca testified.[3]

Second, Oliver wanted to show that Muzzuca could have gotten an arguably more reliable indication of whether Oliver was under the influence of alcohol to the extent that it was less safe for him to drive by performing field sobriety evaluations such as the horizontal gaze nystagmus and alphabet tests. But the question for the jury was whether Oliver's driving in combination with the indicators of impairment that he did exhibit showed that he was legally impaired to drive. As acknowledged by Oliver, Muzzuca was not required to conduct any given field sobriety evaluations. The trial court was thus authorized to find that whether Muzzuca could have conducted other evaluations more probative than the one that Oliver actually performed was not relevant.[4] Consequently, the trial court did not abuse its discretion in refusing to admit this expert testimony.[5]

---

[2] Compare *Sturdy v. State*, 192 Ga. App. 71, 72 (383 SE2d 632) (1989) (where the investigating officer improperly testified to the high level of the results of the alco-sensor test).

[3] See *Viau v. State*, 260 Ga. App. 96, 98 (2) (579 SE2d 52) (2003) (physical precedent only) (accused may introduce evidence of error or circumstances that might have caused breath test machine to malfunction, so long as evidence is relevant).

[4] See *Pickle v. State*, 280 Ga. App. 821, 828 (1) (635 SE2d 197) (2006) (evidence is relevant and thus admissible if it tends to prove a material issue).

[5] See generally *Lott v. State*, 281 Ga. App. 373, 375 (3) (636 SE2d 102) (2006) (admissibility of expert testimony is a matter within trial court's sound discretion).

2. Oliver complains of the trial court's refusal to declare a mistrial when Muzzuca testified on cross-examination that it is legal for persons 21 years of age and over to have alcohol on their breath or in their body only if the alcohol concentration is under the legal limit of 0.08 grams.

Muzzuca gave this testimony after defense counsel suggested in his question to Muzzuca that such persons can have alcohol on their breath or in their body and still drive legally. Muzzuca's testimony was responsive to defense counsel's question, constituted an accurate clarification of it under the law, and therefore provided no ground for a mistrial.

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 6, 2008 —
RECONSIDERATION DENIED OCTOBER 30, 2008.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*David L. Cannon, Jr.,* Solicitor-General, *David M. McElyea, Assistant Solicitor-General*, for appellee.